## LIGHTOLIER CO. *v.* UNITED STATES [1]

United States Customs Court, First Division

(Decided September 29, 1938)

*Strauss & Hedges* (*Eugene F. Blauvelt* of counsel) for the plaintiff.
*Webster J. Oliver,* Assistant Attorney General (*John J. McDermott* and *William J. Vitale,* special attorneys), for the defendant.

---

[1] C. D. 36.

Before McClelland, Sullivan, and Brown, Judges

Sullivan, Judge: The provisions of the Tariff Act of 1930 involved in this suit are contained in paragraph 218 (c) and read as follows:

Illuminating articles of every description, finished or unfinished, wholly or in chief value of glass, for use in connection with artificial illumination: * * * chimneys, 55 per centum ad valorem; globes and shades, 70 per centum ad valorem * * *.

The merchandise was assessed at 70 per centum and claimed dutiable at 55 per centum under the foregoing provisions. It is invoiced as "chimneys," and is represented by Exhibits 1 to 8, inclusive. As to Exhibit 3 the plaintiff admits it is a globe and was properly classified by the collector.

Exhibits 1, 2, 4, and 7 bear some resemblance to the chimneys of old-fashioned kerosene lamps, and are apparently intended to be used in an upright position over an electric-light bulb. They have flanges on the base by which they can be attached by clips or otherwise to an electric lamp. Exhibits 5, 6, and 8 are without such flanges.

The item numbers of this merchandise are Nos. 9908 (Exhibit 1), 9916 (Exhibit 2), 9952 (Exhibit 3), 9856 (Exhibit 4), 9994 (Exhibit 5), 9964 (Exhibit 7), 9713 (Exhibit 6), and 4651 (Exhibit 8). As heretofore stated, there is no controversy as to Exhibit 3.

Plaintiff's witness Adler testified he had to do with the designing of the articles at bar, and that in designing these articles he and his associates "had in mind to design an old colonial lantern" to be illuminated by electricity instead of the candle formerly used; that this is true as to all of the exhibits except Exhibit 3; that, in other words "we were going to reproduce the old colonial fixture"; that with the exception of Exhibit 3 the name in his trade for all these articles is "chimneys"; that the witness had seen kerosene lamps or other oil lamps, having glass chimneys upon them of "about the same shape but different designs" as the articles in question. The witness then defined "chimney" as follows:

—A chimney is a glass article in cylindrical form. It may have a straight shape, or also a little like you see here, the shapes.

Q. It may be in the form of a bulb?—A. Yes, sir.

In response to the court's questions the witness then testified as follows:

Presiding Judge McClelland. You remember the old kerosene lamp?
The Witness. Yes, sir.
Presiding Judge McClelland. The kerosene lamp had a chimney?
The Witness. Yes, sir.
Presiding Judge McClelland. And a globe too?
The Witness. Yes, sir.
Presiding Judge McClelland. How does that article, Exhibit 1, compare with the globe that you have seen on the old colonial lamp?

The WITNESS. That is a chimney. * * * That is the same as the chimney on the kerosene lamp.

The witness testified that Exhibit 1 represents the "glass cylindrical article surrounding the wick" in the kerosene lamp.

There was introduced in evidence as Exhibit A a sample fixture for which Exhibit 2 was designed. This fixture is evidently intended to attach to a wall and to contain an electric-light bulb in an upright position. Outside of the socket for the bulb is a holder or socket of a size suitable to contain Exhibit 2 as a chimney or shade outside the light. Exhibits 5, 6, and 8 could not be placed in such holder or socket, as they lack the flange necessary for insertion therein. The flanges on Exhibits 1, 4, and 7 are not suitable for this fixture Exhibit A.

The witness then testified that the fixtures for which the other exhibits, with the exception of Exhibit 3, are designed are similar electrical reproductions of old kerosene or candle lamps; that in the past he had seen chimneys used on such lamps having "frosting, or sand-blasting, or decorations similar to that on Exhibit 1", also on all the other exhibits, except Exhibit 3; that on some of the lamps for which these exhibits are designed there are "shades around them, in addition to these glass articles."

On cross-examination the witness testified "the colonial chimney" does not differ from articles like Exhibits 1 to 8.

Plaintiff's witness Moser testified he is employed by the plaintiff as a designer of electrical fixtures; that he has made a study of colonial fixtures; that with the exception of Exhibit 3 he designed these exhibits and the lamps or fixtures for which they are used; that there was a part of a colonial lamp or candle fixture known as a chimney, which "was usually the glass put above or around the light to give it the necessary draft and to steady the flame, so that the light would burn steadily and not flicker"; that these articles, with the exception of Exhibit 3, are "created in imitation of the chimneys used on colonial lamps or candle fixtures"; that he designed Illustrative Exhibit A, and Exhibit 2 was designed by him to fit therein; that Exhibit A imitates "an old oil font."

An electric wall fixture was introduced in evidence as Illustrative Exhibit B. The witness testified he designed it, and Exhibit 5 was designed to be used with it. Exhibit B contains a socket for an electric bulb to be held in an upright position. Around this socket is a rim over which Exhibit 5 fits.

The witness testified Exhibit B imitates "an old oil font."

An electric wall fixture was introduced in evidence as Illustrative Exhibit C. The witness testified he designed it, and that Exhibit 4 was intended to be used with it. In Exhibit C there is an electric-

light socket, round and colored white, evidently intended to represent a candle. The flange on Exhibit 4 fits into a rim surrounding this socket. As to Exhibit C the witness testified:

This is also an old oil font, but in this case we put in a small candle. We took it away from the oil font, and used a small candle, just for sales appeal, but theoretically it is the same as the other, same oil font theory.

A page of a catalog was received in evidence as Illustrative Exhibit D. The witness testified that the cut, No. 2320, represents a lighting fixture with Exhibit 1 thereon. This resembles somewhat an old-fashioned hanging oil lamp, suspended from a ceiling by a chain. The cut numbered 2310, described "With Hurricane *globe* that gives the hall a most interesting decorative note" [italics ours], depicts an electric fixture evidently intended to be attached to a ceiling, containing Exhibit 4 therein.

Another catalog page received in evidence as Illustrative Exhibit E, in a cut numbered 4822, depicts a wall electric fixture, representing a kerosene lamp, enclosed in a lantern casing, having Exhibit 2 thereon.

The next exhibit in evidence is a catalog page, marked Illustrative Exhibit F. A cut numbered 2252 represents a wall fixture having two articles like Exhibit 5 mounted thereon. The same is true of 2250, a hanging lamp; 2251, a wall lamp; and 2255, a chandelier, containing four lamps with Exhibit 5 mounted thereon.

A catalog page, Illustrative Exhibit G, was also received in evidence. The cut 2569 depicts a hall lamp attached to a ceiling on which Exhibit 8 is mounted.

The witness then responded in the affirmative to the following question:

Q. Now, Mr. Moser, in your opinion based upon your thirty years' experience in the electrical business are Exhibits 1, 2, 4, 5, 6, 7, and 8 chimneys?

On cross-examination the witness was asked whether in the colonial oil lamps, where articles like these exhibits were used, there was also "a glass tube used over the flame, inside of these articles," and he replied there was not; that there were also articles used to cover a flame over which was a glass tube, called a shade or a globe, being "ostensibly a shade to hide the flame," or "hide the glare of the light."

In response to questions by the court the witness defined "chimney" and "shade" as follows:

A chimney was used to create the necessary draft to make the flame burn steadily. * * * A shade was something to cover the glare of the flame.

The court asked him:

Judge SULLIVAN. These exhibits on the table there—what is their purpose? Are they for shades or chimneys?

and the witness answered:

The WITNESS. In this case they cut them to hide the flame. They were chimneys to create the necessary draft, and cut to hide the flame.

The witness then testified that these exhibits are "to *shade* the flame, glare of the flame in your eye" [italics ours], or to soften the glare; that the purpose of a chimney is to create a draft to promote combustion, and that there is no necessity of promoting combustion with electric-light bulbs, or "for promoting a draft with electric-light bulbs"; that the sand-blasting and designs on all of these articles were for the purpose of "shading the light."

On redirect examination the witness explained the use of the word "Globe" on Exhibit D, cut 2310, by testifying it is a hurricane globe "used for the same purpose the chimney was used, to create the necessary draft, and keep the candle from being blown out."

Plaintiff's witness Lowenstein testified he is sales manager of a firm handling illuminating glassware solely used for electric fixtures; that he sells articles like these exhibits as chimneys. He introduced in evidence as illustrative exhibits various articles similar to some of the articles in question, and testified that he sold them as chimneys; that Exhibits 1, 2, 4, 5, 6, 7, and 8 are chimneys in his opinion, and not globes or shades.

On cross-examination he testified that "the function of the chimney was to cause a direct draft from the bottom to the top" to create combustion in oil lamps, but "not today, for these are used for electric lamps * * * they can be used for oil lamps"; that "these are reproductions from such articles which were originally used as oil lamps," and he had not seen them used with an oil lamp, but only with electric illuminating lamps; that when these articles are used with unfrosted electric globes they soften the glow of the light to a certain extent; and that they are not to create a draft to the lamp, nor permit combustion.

Defendant's witness Gleason testifies his concern manufactures illuminating or lighting glassware; that he has personally sold such merchandise throughout the United States, also supervised the sales, in wholesale quantities; that he is familiar with articles known as globes or shades, and has been since 1910.

A catalog of this witness' merchandise was received in evidence as Illustrative Exhibit K.

The witness pointed out cuts representing articles similar to Exhibits 1, 2, 3, 4, 5, 6, 7, and 8, on various pages of this catalog, and testified that in all his experience these articles have been described as "shades and globes"; that the purpose of these articles is "to surround an incandescent lamp; soften the glow of the light; modify it; reflect; and in these particular instances these shades are decor-

ative"; that he doubts very much whether these articles can be used with kerosene lamps, for the following reason:

Knowing the manufacture of these globes and shades, if you put a kerosene burner in these globes or shades, they will go to five million pieces.

On cross-examination he testified these articles, Exhibit 3, are used on modern reproductions of electrical adaptations of old-fashioned lamps, and immediately surround the source of illumination.

Defendant's witness Lissfelt testified he is manager in charge of the sales office of a corporation manufacturing, among other things, "oil lamp chimneys and all kinds of illuminating glassware for electrical illumination."

The witness testified that "The purpose of a chimney is to create a draft and also create the proper combustion so the flame will burn steadily and without smoking"; that a globe has many functions, among them to "act as a shield against the glare of light," and it "may be ornamental"; that "a shade would be to protect the eyes in a stricter sense; sometimes used for decorating purposes" and to soften the glow of the light.

He was shown the exhibits, and asked what type of articles they represent. He replied:

If I were offering them for sale during all my experience, I would say they were globes and shades.

He testified his company manufactures articles similar to the exhibits, and sells them as "globes or shades"; that if his company received an order for chimneys "we would give them something quite different from any one of these"; that Exhibit 2 would possibly be called a chimney "but it could never be used with an oil lamp * * *. The flare is so large it would pop to pieces as soon as the light were turned on"; that he had never heard these articles called anything else than globes or shades.

On cross-examination he testified in effect that if Exhibit 5 were used with an oil lamp it would be necessary to place a chimney inside of it "because the glass is an expensive one because of the cutting, and you would have to protect it from the heat of the lamp"; that (referring to the exhibits) "that type of decoration is so expensive, so weakening to the glass, you destroy, crack, strain, it cuts through the surface of the glass, and when applied to an open flame it explodes."

Samples of chimneys manufactured by the witness' company were received in evidence as Collective Illustrative Exhibit Q. They resemble to some extent Exhibit 2 in shape, but are plain and undecorated. The other exhibits of the merchandise in question do not resemble them in any respect.

The testimony of the last witness called by the defendant is not material.

It is clear from the foregoing that it is not disputed these are glass illuminating articles. The sole controversy is whether these articles are classifiable as chimneys or as globes or shades.

It is very evident from the testimony that the articles at bar are not used as chimneys, viz, to create a proper combustion to enable the lamp flame to burn steadily and without smoking. Their purpose is to shade the eyes from the intense glare of the electric light and for decoration or ornamentation. They are not actually chimneys, but what may be termed *imitations of lamp chimneys*. Nor could they be used as chimneys in an ordinary kerosene lamp, as they would break if so used.

We are satisfied that these articles are used as shades or globes on electric lighting fixtures, and not as chimneys, for chimneys would be useless thereon. Further, the evidence convinces us that while in appearance they may resemble chimneys used on oil lamps they could not be used thereon, if necessary, in addition to their use with electric lights. In other words, these articles could not serve the double purpose of chimneys for oil lamps and as globes or shades on electric lights. Therefore, we are of opinion they were correctly classified by the collector.

The protests are overruled. Judgment for defendant.